[No. 14043.   Department One. — January 25, 1892.]

PIERRE PRIET, APPELLANT, v. CHRISTIAN REIS, TREASURER, ETC., RESPONDENT.

DUPONT STREET FUND — MONEY COLLECTED TO PAY COUPONS — PAYMENT OF DAMAGES. — Under the act of the legislature providing for the widening of Dupont Street in the city and county of San Francisco (Stats. 1875-76, p. 439), money collected from taxation, for the specific purpose of paying coupons attached to the bonds, is payable only for their redemption, and cannot be used to pay damages awarded to property-owners.

ID. — MISAPPROPRIATION OF DAMAGE FUND — REPLACEMENT. — The fact that part of the money collected from the sale of bonds which should have been used in the payment of damages to property-owners was illegally used to pay the interest on the bonds, and that part of the money collected from taxes to pay interest was used to redeem some of the bonds, does not, by operation of law, pass the money collected from taxation for the payment of coupons, to the damage fund, to replace that illegally taken therefrom.

ID. — MANDAMUS. — In this state the writ of mandate is issued only to enforce an act especially enjoined by law as a duty resulting from an office, trust, or station. It will not lie to compel the payment of money out of a fund which the law does not allow to be applied to the use sought.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco.

The facts are stated in the opinion.

*D. H. Whittemore*, for Appellant.

Money illegally transferred from one fund to another is in law still in the fund from which it was transferred. (*People* v. *Comptroller*, 77 N. Y. 45; Dillon on Municipal Corporations, 3d ed., sec. 830; *Hohl* v. *Westford*, 33 Wis. 324.) The money derived from the sale of the bonds was a trust fund, out of which these warrants were to be paid. (*Aurora* v. *Chicago etc. R. R. Co.*, 119 Ill. 246.)

*John H. Durst*, and *George Flournoy, Jr.*, for Respondent.

Plaintiff's position, that money having been taken from the "damage fund" and illegally paid out in discharging obligations of the "interest fund," and there now

being money in the "interest fund" he is entitled to
payment from that source, which right he can enforce
by *mandamus,* is not well taken, as there must be moneys
in the very fund out of which he is entitled to payment,
before *mandamus* will lie. (*Bates* v. *Porter,* 74 Cal. 243;
*Miller* v. *State,* 22 Pac. Rep. 326; *Huff* v. *Kimball,* 39
Ind. 411; *People* v. *Wood,* 2 Abb. Pr., N. S., 321; *Redding*
v. *Bell,* 4 Cal. 333; *People* v. *Reis,* 76 Cal. 275.) The writ
does not lie to command a person to perform an act be-
yond that enjoined by law upon him, as a duty pertain-
ing to his office. (Code Civ. Proc., sec. 1085; *Davis* v.
*Porter,* 66 Cal. 659.)

TEMPLE, C. — This is an application for a writ of
mandate to compel the defendant, as treasurer of the
city and county of San Francisco, to pay a warrant for
damages, under the act of the legislature for widening
of Dupont Street.

That act (Stats. 1875–76, p. 439) provided for the sale
of bonds, and that the proceeds should be held to pay
expenses and damages awarded to property-holders.

In case of a dispute as to whom the damages should
be paid, the commissioners were to place a warrant for
the amount in the hands of the clerk, and the claimants
could sue the treasurer, joining other claimants; and
the treasurer was to pay in accordance with the deter-
mination.

Among the awards was that mentioned in the com-
plaint, for $10,932, the warrant for which was deposited
with the county clerk because the claimants could not
agree.

Judgment was entered in a suit to determine the
rights of the claimants in 1883.

Section 9 of the act provides for the payment of the
money realized from the sale of the bonds to the treas-
urer, to be devoted to paying expenses and damages;
the fund to be called the "Dupont Street fund."

Section 13 provides for the levying of a tax, and that
"when collected the said moneys shall be paid over to

the treasurer of the said city and county, and constitute a part of the Dupont Street fund, and to be paid out by said treasurer only in payment of the coupons attached to said bonds as the same from time to time become due."

The same section provides for a tax to create a similar fund, and that the moneys so realized "shall constitute a part of the Dupont Street fund, and shall only be paid out in redeeming bonds issued in pursuance of the act."

The Dupont Street fund then consisted of three parts, each derived from a specified source and devoted to specific purposes; in short, three distinct funds.

The moneys derived from any specific source could not be legally used in discharge of obligations other than specified as payable from such moneys. And as we have seen, it was expressly enacted that the moneys raised by taxation should be expended only in payment of coupons and bonds.

After paying all the damages awarded, except the claim here in question, and all expenses of the commissions, there was in the Dupont Street fund more than fifty-five thousand dollars derived from the sale of bonds, but on or about the first day of December, 1878, the then treasurer illegally used fifty-five thousand dollars of said money to pay interest on the bonds, and thereafter used of the money collected from taxes to pay interest, fifty thousand dollars to redeem fifty of the bonds, leaving in the fund $1,869.18, which has been paid upon the warrant.

No taxes were collected for this fund after the determination of the suit to settle the rights of the claimants to the award in question, until 1888, since which time there had been collected the sum of $15,299.84, which was there at the time this proceeding was commenced, March 1, 1889.

It is averred that from the sixth day of January, 1883, — when the partial payment mentioned was made on the warrant, — until the seventeenth day of May, 1888, there was no money in the Dupont Street fund. Nor does it

appear that there has been at all, since that date, any money in the fund which was derived from the sale of bonds.

There is still due upon the warrant $9,062.82, for which due demand has been made, but the treasurer refuses to pay, on the ground that he has no funds in his hands properly applicable thereto.

These facts appear in the petition, and the case went against the plaintiff on demurrer. He appeals from the judgment.

The writ is issued to enforce an act specially enjoined by law as a duty resulting from an office, trust, or station. (Code Civ. Proc., sec. 1085.)

Is there money in the Dupont Street fund which the law makes it the duty of respondent to pay upon this warrant?

To answer this question in the affirmative would be to hold that the money collected from taxation for the specific purpose of paying coupons, and expressly made payable only for their redemption, by operation of law, as soon as collected, passed to the damage fund, to replace that illegally taken therefrom.

The statute only authorizes a tax levy sufficient to pay the maturing coupons. It would seem, therefore, that some coupons must remain unpaid if this money can be diverted to replace the misappropriated funds.

The petition does not show whether the money in the treasury was collected on the tax levy to pay interest or the bonds. The petition states that although the money in the damage fund was at first used to pay interest on the one thousand bonds, yet when the money was collected from taxes to pay this interest, fifty thousand dollars of it was used to redeem fifty of the bonds. If the theory be correct, that the first money collected to pay interest, after the misappropriation of the damage fund for the benefit of the interest fund, would by operation of law replace the money wrongly diverted for its benefit, it was then replaced and again misappropriated. Even on that theory this fund could not again be drawn

upon to supply the deficiency. But all the money in the Dupont Street fund may be money collected to pay interest.

But the whole contention is fallacious. The act provides a tax for twenty years to pay interest and principal. A tax levy each year sufficient to pay the interest and one twentieth part of the bonds is authorized, and it is especially enjoined that the money so raised shall be used for no other purpose. Evidently it cannot be so diverted without to some extent impairing the rights of the bond-holders.

It is said that the bond-holders have had the benefit of the misappropriation, and will not be injured by the payment. The bond-holders are presumably many. It does not appear that those who held the fifty bonds wrongly paid own any others. The present bond-holders were not benefited by the illegal payment, and the fact that others were paid furnishes no ground for depriving them of their interest when due.

Probably the same reason would be applicable if it had appeared that all the money in the general Dupont Street fund was collected for the payment of bonds, but such fact does not appear.

This question seems to have been decided in *Bates* v. *Porter*, 74 Cal. 224. In this state, under our code, the writ of mandate can perform no such function as was allowed in *People ex rel. Dannat* v. *Comptroller*, 77 N. Y. 45.

We think the judgment should be affirmed.

VANCLIEF, C., and FITZGERALD, C., concurred.

The COURT. —For the reasons given in the foregoing opinion, the judgment is affirmed.